# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

GREEN ROCK, LLC,

*Plaintiff,*

v.

INTERNAL REVENUE
SERVICE, et al.,

*Defendants.*

Civil Action No. 2:21-cv-1320-ACA

**Oral Argument Requested**

## BRIEF IN SUPPORT OF PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

John C. Neiman, Jr.
MAYNARD COOPER & GALE P.C.
1901 Sixth Avenue North, Ste. 2400
Birmingham, AL 35203
(205) 254-1228
jneiman@maynardcooper.com

Patrick Strawbridge (pro hac vice)
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(703) 243-9423
patrick@consovoymccarthy.com

Cameron T. Norris (pro hac vice)
Frank H. Chang (pro hac vice pending)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com
frank@consovoymccarthy.com

*Counsel for Green Rock, LLC*

# TABLE OF CONTENTS

Introduction ............................................................................................................1

Statement of Facts....................................................................................................2

Argument ..................................................................................................................7

    I.  Notice 2017-10 violates the APA's notice-and-comment requirement. ...............8

        A.  The Notice is a legislative rule that had to go through notice and
           comment.......................................................................................................9

        B.  No statute exempts the Notice from the APA's notice-and-comment
           requirement. ................................................................................................12

    II.  Notice 2017-10 is arbitrary and capricious and not accordance with law. .........15

Conclusion................................................................................................................19

Certificate of Service ...............................................................................................20

**INTRODUCTION**

Citizens "must turn square corners when they deal with the government," especially the IRS. *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021). So "it cannot be too much to expect the government to turn square corners with it deals with them." *Id.* That obligation includes basic tenets of administrative law, like the APA's notice-and-comment requirement. *See generally Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 55 (2011) ("[W]e are not inclined to carve out an approach to administrative review good for tax law only.").

The IRS didn't go through notice and comment before issuing Notice 2017-10, even though that Notice imposes significant duties and liabilities on material advisors to conservation-easement transactions, like Green Rock. The IRS used to believe this defect could not be challenged in an ordinary APA suit, thanks to the Anti-Injunction Act. But the Supreme Court recently rejected that view in *CIC Services, LLC v. IRS*, 141 S. Ct. 1582 (2021).

In the wake of *CIC*, litigants have been challenging IRS Notices under the APA—and winning every time. *See Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1141 (6th Cir. 2022) (vacating Notice 2007-83 for failing to go through notice and comment); *CIC Servs., LLC v. IRS (CIC III)*, 2022 WL 985619, at *8 (E.D. Tenn. Mar. 21, 2022) (vacating Notice 2016-66 for multiple APA violations). This Court should reach the same result. Because Notice 2017-10 violates the APA, this Court should enter summary judgment for Green Rock and set aside the Notice.

## STATEMENT OF FACTS

The following facts are true and not in genuine dispute:

1. A conservation easement arises when a landowner takes a portion of real property and limits its development or use. The right to enforce the easement is held by a separate party, often a nonprofit dedicated to land preservation. Answer (Doc. 13) ¶20.

2. Land conservation is good. As the IRS recognizes, it protects outdoor recreation, forests and farmland, historically important areas, and natural habitats for plants, fish, and wildlife. *See* 26 C.F.R. §1.170A-14(d); Administrative Record (Doc. 17-3) 189-90 ("AR").

3. For more than 30 years, Congress has encouraged land conservation by allowing a tax deduction for landowners who agree to donate a conservation easement. Answer ¶1, ¶23; *see* Pub. L. No. 96-541, §6(a), 94 Stat. 3204 (1980).

4. Specifically, a taxpayer can donate "a qualified real property interest, to a qualified organization, exclusively for conservation purposes." 26 U.S.C. §170(h)(1). The donor agrees to restrict the use of the real property "in perpetuity." §170(h)(2). The donor then deducts the fair-market value of this easement on his tax return. 26 C.F.R. §1.170A-14(h).

5. Since 1980, Congress has extended and enhanced this deduction several times. Answer ¶24. In 2006, it temporarily increased the size of the deduction and the number of years that taxpayers could claim it. Answer ¶25; *see* Pub. L. No. 109-280,

§1206, §1219, 120 Stat. 780 (2006). Congress extended those increases in 2008, 2010, 2012, and 2014. Answer ¶26. It made them permanent in 2015. Answer ¶3, ¶26; *see* Pub. L. No. 114-113, §111, 129 Stat. 2242 (2015).

6.     But the IRS has a different view. Suspecting abuse, the agency repeatedly asked Congress to subject conservation-easement transactions to greater reporting requirements. *See, e.g.*, U.S. Dep't of Treasury, *General Explanations of the Administration's Fiscal Year 2016 Revenue Proposal* 190-92 (Feb. 2015), bit.ly/3F8r4G3 (*FY 2016 Revenue Proposal*). Congress did not accept the IRS's proposals. *See* U.S. Dep't of Treasury, *General Explanations of the Administration's Fiscal Year 2017 Revenue Proposal* 215-16 (Feb. 2016), bit.ly/37008M0 (*FY 2017 Revenue Proposal*) (repeating the same proposals that Congress did not adopt previously).

7.     So in late 2016, the IRS issued Notice 2017-10. Answer ¶29; *see* AR1-6. The Notice designates certain conservation-easement transactions as "listed transactions." AR3-4. Listed transactions are a type of "reportable transaction," 26 U.S.C. §6707A(c)(2), and reportable transactions are ones that have "a potential for tax avoidance or evasion," §6707A(c)(1).

8.     Designating something a reportable transaction triggers statutory reporting and recordkeeping requirements. For each transaction, taxpayers must file Form 8886. §6707A(a). And material advisors—those who provide any "material aid, assistance, or advice" to a reportable transaction—must file Form 8918. §6111(a), (b)(1)(A). The IRS estimates that the burden of completing these forms is 21.5 hours

3

and 14.5 hours, respectively. Answer ¶¶35-36. Material advisors also must keep detailed records on every reportable transaction. 26 U.S.C. §6112(a).

9.  Violations of these reporting and recordkeeping requirements come with hefty statutory consequences. All violations are punishable by civil monetary penalties. §6707(b); §6707A(b); §6708(a). And "willfu[ll]" violations are a misdemeanor punishable with fines and up to a year in prison. §7203.

10. Congress delegated the authority to identify reportable transactions to the Treasury Secretary (who, in turn, delegated it to the IRS). *See* §6707A(c) (taxpayers); §6111(a), (b)(2), (c) (material advisors). Section 6707A of the tax code instructs the agency to identify reportable transactions "under regulations prescribed under section 6011." §6707A(c)(1). Section 6011, in turn, allows the agency to determine "by regulation" how taxpayers must "make a return or statement" and what "information" they must provide. §6011(a). Another section of the tax code gives the agency similar authority over material advisors, allowing it to "prescribe regulations … as may be necessary or appropriate." §6111(c)(3).

11. Despite these statutory commands to use "regulations," Notice 2017-10 did not go through the APA's notice-and-comment process for regulations. *See* 5 U.S.C. 553. The IRS instead issued the Notice under 26 C.F.R. §1.6011-4(b)(2), a regulation that purports to allow it to identify listed transactions "by notice, regulation, or other form of published guidance." AR4.

12.     In the past, the IRS has defined reportable transactions through notice-and-comment regulations. *E.g.*, 26 C.F.R. § 1.6011-4(b)(1)-(7). But it more commonly uses these Notices, which do not go through notice and comment.

13.     The IRS once argued that these Notices could not be enjoined under the APA due to the Anti-Injunction Act, 26 U.S.C. §7421(a). *See CIC*, 141 S. Ct. at 1588. But the Supreme Court unanimously rejected that view in *CIC*. *See id.* at 1594.

14.     Now that these lawsuits can go forward, courts have invalidated Notices under the APA. In *Mann Construction*, the Sixth Circuit held that Notice 2007-83 was invalid for failure to go through notice and comment. 27 F.4th at 1141. And in *CIC*, the Eastern District of Tennessee ruled on remand that Notice 2016-66 was invalid for that reason and for being arbitrary and capricious. *CIC III*, 2022 WL 985619, at *4.

15.     Although the IRS did not solicit any comments from the public for Notice 2017-10, it received some letters and emails from interested parties. AR766-805.

16.     One email pleaded with the IRS to consider "less onerous and equally effective solutions that will not cast and burden a vitally important class of conservation easement donations as 'abusive' and stigmatize the many good and appropriate conservation easements." AR773.

17.     Another letter raised "specific concerns with designating certain conservation easement donations as 'listed transactions' ... without consultation with impacted stakeholders and a discussion on its impact on conservation." AR777. Of concern was the "chilling effect [that] will … stop or impede a grea[t] number of non-

abusive transactions" that Congress wanted to maximize. AR778. Investors would be confused about whether the IRS "will be designating *all* conservation easement donations as 'listed transactions.'" AR778. And "[a]ttempts to change the current legal framework could be detrimental to land conservation." AR782.

18. Yet another email warned that the Notice would "scare away many well-intentioned landowners from what Congress intended to support when [it] made the enhanced easement incentive permanent because of the perception that they are participating in a highly scrutinized transaction and will be at a greater chance of audit." AR796. And the email asked for consultation with "a broad group of conservation partners." AR796.

19. Other emails and letters similarly asked the IRS to hold off on unilaterally issuing the Notice and to solicit input from "a broad and diverse group of conservation participants." AR 797; *see* AR798-801, 803-05.

20. Some even suggested a less heavy-handed alternative, such as "focus[ing] on over-valuation," which was identified as "the greatest possible area of abuse under Section 170(h)," or "leveraging existing streams of information the IRS receives" without requiring new reports. AR778.

21. Notice 2017-10 does not respond to these comments. *See* AR1-6.

22. Notice 2017-10 subjects conservation-easement transactions to the reporting and recordkeeping requirements retroactively, dating back seven years to January 2010. Answer ¶33.

23. Notice 2017-10 also refers to "promotional materials" that entities use to attract investors and to "substantially similar" transactions to the ones outlined in the Notice—both of which can also be covered by the Notice. AR2, 4. The Notice does not provide definitions of either term. Answer ¶¶67-68; AR2, 4.

24. Green Rock filed this lawsuit for the purpose of setting aside Notice 2017-10. *See* Robbins Decl. (Doc. 21) ¶8.

25. Green Rock is a material advisor to the conservation-easement transactions covered by Notice 2017-10. *See* Robbins Decl. ¶¶5-6; 26 U.S.C. §6111(b)(1)(A).

26. Green Rock estimates that it spends at least 200 manhours per year to complete the necessary Forms 8918. Robbins Decl. ¶7. Green Rock also hires outside lawyers and accountants to help it prepare these forms, which it estimates has cost it $250,000. ¶7. The Notice also requires Green Rock to spend time it otherwise wouldn't on recordkeeping. ¶7.

## ARGUMENT

This Court must grant summary judgment if, under the undisputed material facts, Green Rock is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under the APA, the question is whether this Court should "'hold unlawful and set aside'" Notice 2017-10 because it is "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Hewitt v. Comm'r*, 21 F.4th 1336, 1342 (11th Cir. 2021) (quoting 5 U.S.C. § 706(a)(A)). This Court should do that here, as the Notice does not

comply with the APA's notice-and-comment requirement and is otherwise arbitrary and capricious and unlawful.

## I. Notice 2017-10 violates the APA's notice-and-comment requirement.

The APA requires so-called "legislative rules" to go through notice and comment. *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 95-97 (2015) (citing 5 U.S.C. §551; §553). The notice-and-comment process requires the agency to publish a notice of its proposed rule, give interested parties the opportunity to submit comments, and then "'consider and respond'" to them. *Hewitt*, 21 F.4th at 1342; *see* 5 U.S.C. §553. This process is important: It "gives affected parties fair warning of potential changes in the law and an opportunity to be heard on those changes—and it affords the agency a chance to avoid errors and make a more informed decision." *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1816 (2019). It also "shines a light on delegations of authority from Congress to an executive-branch agency to ensure they remain subject to public scrutiny." *Mann Constr.*, 27 F.4th at 1142.

Notice 2017-10 did not go through notice and comment. It therefore violates the APA unless it is a mere "interpretative rule" or unless another statute exempts it from the APA. Because neither is true, the Notice must be vacated. *See Tenn. Hosp. Ass'n v. Azar*, 908 F.3d 1029, 1042 (6th Cir. 2018) ("If an agency attempts to issue a legislative rule without abiding by the APA's procedural requirements, the rule is invalid."); *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 199 (D.C. Cir. 2009) ("Failure to provide the required notice and to invite public comment ... is a fundamental flaw that

normally requires vacatur of the rule.”); *Black Warrior Riverkeeper, Inc. v. EPA*, 2019 WL 5864138, at *2 (N.D. Ala. Nov. 8, 2019) (“[V]acatur ... is the ordinary APA remedy”).

### A. The Notice is a legislative rule that had to go through notice and comment.

Under the APA, there are two categories of rules: legislative rules and interpretative rules. *Perez*, 575 U.S. at 96. Legislative rules “have the ‘force and effect of law.’” *Id.* Interpretative rules do not; they simply “‘advi[se] the public of the agency’s construction of the statutes and rules which it administers.’” *Id.* at 97. Legislative rules must go through notice and comment. 5 U.S.C. §553; *see, e.g.*, *United States v. Shearson Lehman Bros., Inc.*, 650 F. Supp. 490, 496 (1986) (holding that an IRS Form was a legislative rule that should have gone through notice and comment); *Bullock v. IRS*, 401 F. Supp. 3d 1144, 1159 (D. Mont. 2019) (setting aside an IRS revenue procedure issued without notice and comment).

Courts have explained how to spot a legislative rule. One “important touchstone” is that legislative rules “affec[t] individual rights and obligations.” *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979); *accord Mann Constr.*, 27 F.4th at 1143 (legislative rules “impose new rights or duties and change the legal status of regulated parties”); *Children’s Hosp. of the King’s Daughters, Inc. v. Azar*, 896 F.3d 615, 620 (4th Cir. 2018) (legislative rules “‘creat[e] new law,” “impos[e] new rights or duties,” or “expan[d] the footprint of a regulation”). Another hallmark is that “failure to comply” with a legislative rule “comes with the risk of penalties and criminal sanctions.” *Mann Constr.*,

27 F.4th at 1143. Yet another hallmark is that legislative rules "ste[m] from an express and binding delegation of rulemaking power." *Id.*; *accord NRDC v. Wheeler*, 955 F.3d 68, 83 (D.C. Cir. 2020) (legislature rules are ones that "an agency promulgates with the 'intent to exercise' its 'delegated legislative power' by speaking with the force of law").

Notice 2017-10 has all these features. The IRS purportedly issued it under Congress's delegations of authority in 26 U.S.C. §6011, §6707A, §6111, and §6112. *See* AR5-6; *Mann Constr.*, 27 F.4th at 1143-44. The IRS used that authority to formally declare—with the "force and effect of law"—that certain conservation-easement transactions are listed transactions. *Perez*, 575 U.S. at 96-97; *see* AR1, 4-6. That declaration now requires taxpayers and material advisors to comply with strict reporting and recordkeeping requirements, a duty they did not have before Notice 2017-10. AR4-6 *see* 26 U.S.C. §6111; §6112; §6707A. And those requirements come with harsh civil penalties and criminal sanctions. *See* 26 U.S.C. §6707; §6707A; §6708(a). By declaring that certain conservation-easement transactions are listed transactions, the Notice plainly "expands the footprint of" the IRS's regulatory reach. *CIC Servs., LLC v. IRS* ("*CIC II*"), 2021 WL 4481008, at *4 (E.D. Tenn. Sep. 21, 2021).

The Sixth Circuit has considered whether IRS Notices are legislative rules and concluded that they are. In *Mann Construction*, the Sixth Circuit considered Notice 2007-83, which deems certain life-insurance policies to be listed transactions. 27 F.4th at 1143. That Notice was a legislative rule, the Sixth Circuit explained, because it "define[d] a set of transactions that taxpayers must report"—a duty they did not have "before the

Notice." *Id.* Complying with that reporting requirement required "'significant time and expense,'" and violating it risked "penalties and criminal sanctions." *Id.* And the Notice "purport[ed] to carry out" a "congressional delegation" of rulemaking authority to the agency. *Id.* Here, Notice 2017-10 stems from that same congressional delegation, imposes that same reporting requirement, and comes with those same burdens and potential liabilities.

The Eastern District of Tennessee, on remand from the Supreme Court in *CIC*, reached the same conclusion about Notice 2016-66. That Notice designated certain captive-insurance transactions as "transactions of interest"—transactions that, like listed transactions, are a form of reportable transaction. *See* 26 U.S.C. §6707A(c)(1); 26 C.F.R. §1.6011-4(b)(6). Even before the Sixth Circuit's decision in *Mann Construction*, the *CIC* court preliminarily enjoined Notice 2016-66 for failure to go through notice and comment. *CIC II*, 2021 WL 4481008, at *5. The Notice was a legislative rule, the court reasoned, because it "creat[ed] new rights and duties," "expand[ed] the [IRS's regulatory] footprint," and had the "'force of law.'" *Id.* After the Sixth Circuit decided *Mann Construction*, the *CIC* court entered summary judgment against the IRS. *CIC III*, 2022 WL 985619, at *8. Although *Mann Construction* technically involved a different Notice, the court observed that "[t]he Sixth Circuit's analysis … applies equally to the arguments advanced by the IRS regarding Notice 2016-66." *Id.* at *4.

The Eastern District of Tennessee had to follow *Mann Construction* because it is "binding" in the Sixth Circuit. *Id.* This Court should follow *Mann Construction* because it

is right. Notice 2017-10 is a legislative rule that the APA required to go through notice and comment.

## B. No statute exempts the Notice from the APA's notice-and-comment requirement.

If the Court holds that Notice 2017-10 is a legislative rule, the IRS will likely argue that Congress exempted these kinds of Notices from the APA. In both *Mann Construction* and *CIC*, the IRS pointed to §6707A of the tax code, which allows the agency to define reportable transactions "under regulations." 6 U.S.C. §6707A(c)(1). When §6707A was enacted, the IRS had a regulation that allowed it to identify reportable transactions through "'notice, regulation, or other form of published guidance.'" 26 C.F.R. §1.6011-4(b)(1)-(2) (2003). (That regulation still exists today. *See* 26 C.F.R. §1.6011-4(b)(2).) So, the IRS's argument goes, Congress must have known that the agency was bypassing notice and comment and, by not explicitly rejecting that approach in §6707A, must have tacitly approved this state of affairs. *Mann Constr.*, 27 F.4th at 1146-47. And surely when Congress told the agency to identify reportable transactions "under regulations," the IRS's argument further goes, it meant that the IRS could pass one regulation that forever gives itself the power to use "guidance" instead. *Compare* 26 U.S.C. §6707A(c)(1), *with* 26 C.F.R. §1.6011-4(b)(2).

But later statutes cannot create exemptions from the APA's requirements unless they do so "expressly." 5 U.S.C. §559. This rule sets "a high bar." *CREW v. FEC*, 993 F.3d 880, 889 (D.C. Cir. 2021). Exemptions "are not lightly to be presumed." *Marcello*

*v. Bonds*, 349 U.S. 302, 310 (1955). A later statute cannot "abrogate the APA's notice-and-comment requirements" unless it does so "in a 'clear' or 'plain' way." *Mann Constr.*, 27 F.4th at 1145. A statutory scheme that is "compatible" with the APA's procedures doesn't create an exemption. *CREW*, 993 F.3d at 890; *see also Lane v. United States*, 120 F.3d 106, 109 (8th Cir. 1997) (finding no exemption where the later statute presented minor deviations from the APA but no "direct conflicts"). Nor do statutory "inferences layered on top of conjectural implications." *Mann Constr.*, 27 F.4th at 1147.

No statute exempts—let alone *expressly* exempts—the IRS's Notices from the APA. The Sixth Circuit explained why in *Mann Construction*. Section 6707A defines "listed transaction" as a particular type of "reportable transaction," and defines reportable transaction as one that has a potential for tax avoidance "as determined under regulations prescribed under section 6011." 26 U.S.C. §6707A(c); *accord* §6111(b)(2). Section 6011, in turn, allows the agency to "prescrib[e]" "regulations" regarding "return[s]" and "statements." §6011(a); *accord* §6111(c)(3). These provisions merely instruct the agency to identify listed transactions through regulations; they say nothing about "what process" to use when issuing those regulations. *Mann Constr.*, 27 F.4th at 1146. They "do not provide *any* express direction to the agency regarding its procedure." *Id.* (cleaned up). Promulgating notice-and-comment regulations would be "entirely compatible" with these statutes, *CREW*, 993 F.3d at 890, and these statutes do not create "clearly different" rulemaking procedures that "displace" the APA's rulemaking procedures, *Asiana Airlines v. FAA*, 134 F.3d 393, 397-98 (D.C. Cir. 1998).

That the IRS has a regulation purporting to let it define listed transactions through mere guidance does not change the answer. As the Sixth Circuit explained, "the agency's reference to its apparent rules of process, without more, does not show that *Congress* exempted [IRS Notices] from notice-and-comment rulemaking." *Mann Constr.*, 27 F.4th at 1146. Even if Congress were aware of the IRS's regulation—and there's no concrete evidence that it was—mere awareness is not enough to show "express modification of the APA's bedrock procedural guarantees." *Id.* at 1147. After all, Congress is also aware of the rule that it cannot abrogate the APA's procedural requirements unless it does so expressly. *Id.* And the IRS "has not identified any case in which Congress exempted an agency from the APA's requirements via such a winding and elaborate route." *Id.*

In fact, far from implied ratification, Congress's statute outright *rejects* the IRS's regulation. *See CIC II*, 2021 WL 4481008, at *5 n.6. Congress told the agency to define reportable transactions via "regulations," 26 U.S.C. §6707A, but the agency has a regulation saying it can define reportable transactions via "guidance," 26 C.F.R. §1.6011-4(b)(2). This circumvention is itself "arbitrary, capricious, … or otherwise not in accordance with law.'" 5 U.S.C. §706(a)(A). The agency cannot pass a regulation saying it no longer needs to use regulations any more than Congress can pass a statute saying it no longer needs to use bicameralism and presentment. *See INS v. Chadha*, 462 U.S. 919, 959 (1983). If Congress wanted to give the IRS this option, it would have told the agency to identify reportable transactions "under regulations *or guidance*." *Cf. Asiana*

*Airlines*, 134 F.3d at 395. But it did the opposite. Given the consequential nature of bringing an entire industry under a burdensome reporting and recordkeeping regime, Congress understandably ordered the IRS to make these decisions via notice-and-comment regulations.

In short, this Court should reject the IRS's efforts to "carve out an approach to administrative review good for tax law only." *Mayo Found.*, 562 U.S. at 55. The notice-and-comment process improves the IRS's regulations just as much as it improves other regulations. Here, for example, the administrative record includes several examples where key stakeholders expressed concerns over Notice 2017-10. *E.g.*, AR777, 796-97, 798-801, 803-05. But without the formal notice-and-comment requirements, the IRS had no duty to solicit comments from the public more broadly or address any stakeholder's concerns. *Cf. Hewitt*, 21 F.4th at 1343. If it had, the IRS might have stayed its hand or crafted a narrower rule. At a minimum, it would have addressed significant concerns and spelled out its reasoning—reasoning that could later be challenged in court. Regulated entities like Green Rock are entitled to at least that process before the coercive power of the federal government is brought down on them.

## II.     Notice 2017-10 is arbitrary and capricious and not accordance with law.

Even if the Notice were exempt from the APA's notice-and-comment require-ment, it is certainly subject to the APA's ban on agency action that is "'arbitrary, capri-cious, an abuse of discretion, or otherwise not in accordance with law.'" *CIC III*, 2022 WL 985619, at *4 (quoting 5 U.S.C. § 706(a)(A)). An agency violates the APA when it,

for example, "'entirely fail[s] to consider an important aspect of the problem,'" or does not provide an administrative record showing it "'examined the relevant data' and 'articulated a satisfactory explanation' for its decision." *Id.* (quoting *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019)). For at least six reasons, Notice 2017-10 violates this standard.

**1.** The only authority for Notice 2017-10 is 26 C.F.R. §1.6011-4(b)(2), a regulation where the IRS gave itself the power to identify listed transactions "by notice … or other form of published guidance." But as explained above, that regulation is unlawful because it violates Congress's command to identify listed transactions "under regulations." 26 U.S.C. §6707A(c). Without a lawful basis for its existence, the Notice is "not in accordance with law" and "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. §706(2)(A), (C).

**2.** While Notice 2017-10 states that the IRS is "aware that some promoters are syndicating conservation easement transactions" and classifies them as "a tax avoidance transaction," AR1, the Notice "does not identify any facts or data supporting" this conclusion, *CIC III*, 2022 WL 985619, at *5. The Notice also "does not include any underlying facts or data explaining how [the IRS] became aware of" the transactions at issue. *Id.* at *6. And other than generally describing how certain conservation-easement transactions operate, AR2-3, the Notice does not include any "facts … that explain how this transaction" is a tax avoidance scheme, *CIC III*, 2022 WL 985619, at *6. The Notice's bare-bones and conclusory assertions fall woefully short of the APA's requirement that

the agency build "'a rational connection between the facts found and the choice made.'" *Id.* (quoting *Dep't of Commerce*, 139 S. Ct. at 256). Notice 2017-10 is just as devoid of rational explanation as Notice 2016-66, which the Eastern District of Tennessee found to be arbitrary and capricious in *CIC. Id.*

**3.** Notice 2017-10 is arbitrary and capricious because it restricts conservation easements that Congress wanted to incentivize, without grappling with that fact or considering obvious alternatives. Congress did not impose any limits on how valuable donated land can be. *See* 26 U.S.C. §170(h). The only restriction Congress imposed was on the size of the deduction that a taxpayer could take (and for how many years the taxpayer could carry over excesses). §170(b)(1)(E). Nothing in the statute, however, restricts taxpayers from donating highly valued land. *See* AR786 (explaining to the IRS that land "legitimately" can "undergo a major increase [in] its value"). Congress's liberality is consistent with its "objective of maximizing the conservation." AR782.

The IRS's characterization of certain types of conservation-easement transactions as a tax-avoidance scheme countermands Congress's intent to incentivize land conservation. Such a move "scare[s] away many well-intentioned landowners from what Congress intended … because of the perception that they are participating in a highly scrutinized transaction and will be at a greater chance of audit." AR796; *see also* AR778 (describing the "chilling effect will also stop or impede a greater number of non-abusive transactions"); AR782 ("Attempts to change the current legal framework could be detrimental to land conservation."). Yet the Notice never grapples with these obvious

downsides. Nor does it consider or address the inconsistency between its action and Congress's prior inaction. Indeed, Notice 2017-10 imposes the same reporting regime that Congress previously rejected. *See FY 2016 Revenue Proposal* 191; *FY 2017 Revenue Proposal* 215-16.

The IRS similarly failed to consider alternatives. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (failure to "consider an important aspect of the problem" is arbitrary and capricious). For example, it failed to consider "focus[ing] on over-valuation," which some identified as "the greatest possible area of abuse under Section 170(h)." AR778. This error is especially glaring given that Notice 2017-10 appears to be especially concerned with transactions that "greatly inflat[e] the value of the conservation easement." AR2.

**4.** Notice 2017-10 made the reporting and recordkeeping requirements retroactive—dating back seven years to January 2010—without any explanation or justification. AR4; *see Dep't of Commerce*, 139 S. Ct. at 2569 (requiring agencies to articulate "'a satisfactory explanation' for [its] decision"). Interested parties specifically raised concerns about this retroactivity. AR801. Yet the IRS offered no answer.

**5.** Notice 2017-10 also fails to explain why transactions that result in deductions exceeding 2.5 times the initial investment is a tax-avoidance scheme but those that do not exceed that threshold are not. *See* AR2. Although one trade group appears to have suggested this threshold, AR787, the Notice simply rubberstamps it without independently analyzing whether it is reasonable, AR2. Yet "high value parcels where

development pressure is fierce" are precisely the types of land for which conservation can be critical. AR803. The IRS's failure to explain or justify this threshold is arbitrary and capricious. *See Dep't of Commerce*, 139 S. Ct. at 2569.

**6.** Notice 2017-10 lacks definitions of key terms, including "promotional materials" and "substantially similar" transactions. *See* AR1-6 (providing no definition); Answer ¶¶67-68 (admitting there is no additional guidance). In terms of "promotional materials," the Notice's vagueness makes it impossible to know whether it covers, for example, an email between two friends. Nor does the Notice explain how to tell whether a transaction is substantially similar to what the IRS identified. Because the agency "has failed to define the terms at all," this Court is "unable to conclude that [the agency's] actions are rational." *Qwest Corp. v. FCC*, 258 F.3d 1191 1202 (10th Cir. 2001).

## CONCLUSION

The Court should enter summary judgment for Green Rock.

Dated: April 15, 2022

Respectfully submitted,

  /s/ *Cameron T. Norris*

John C. Neiman, Jr.
MAYNARD COOPER & GALE P.C.
1901 Sixth Avenue North, Ste. 2400
Birmingham, AL 35203
(205) 254-1228
jneiman@maynardcooper.com

Patrick Strawbridge (pro hac vice)
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(703) 243-9423
patrick@consovoymccarthy.com

Cameron T. Norris (pro hac vice)
Frank H. Chang (pro hac vice pending)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com
frank@consovoymccarthy.com

*Counsel for Green Rock, LLC*

## CERTIFICATE OF SERVICE

I e-filed this brief with the Court, which will email everyone requiring notice.

Dated: April 15, 2022

  /s/ *Cameron T. Norris*